## The People *vs.* Loomis and Ramsdell.

A *receipt* for the payment of a debt is the subject of larceny. *Per* Beardsley, J.
But stealing a receipt or other instrument from the hands of the party whose act it is, it never having taken effect by delivery, is not larceny.
Therefore, where a debtor procured his creditor to sign a receipt for the debt, under a pretence that he was about to pay him, and then took it from him with a criminal intent, and without paying the money; *held* that he was not guilty of larceny.

Certiorari to the Oneida general sessions. The defendants were indicted for larceny in stealing a certain receipt executed by one Joseph Shepard, acknowledging the payment of seven dollars by the defendant Loomis to Shepard, which the grand jurors say they cannot more particularly describe, it being in the possession of the defendant; but which is alleged to be the personal property of Shepard and of the value of seven dollars. The defendants pleaded not guilty. It appeared, on the trial, that Loomis owed Shepard seven dollars, and that at an interview between him and the defendants, Loomis proposed to pay the debt, and took out of his pocket some bank notes and a receipt which had been prepared. He handed the latter to Shepard to sign and gave the money to the defendant Ramsdell, telling Shepard that as soon as he had signed the receipt the money was ready. Shepard signed the receipt with a pencil and handed it towards Ramsdell with one hand, putting out the other to receive the money, which Ramsdell reached towards him, but did not suffer him to get hold of, taking, however, the receipt out of Shepard's hand. Loomis then took Ramsdell by the arm and said, keep the receipt and the money and go with me, and they went off together upon the run. The paper which Shepard signed was as follows: "Rec'd of G. W. W. Loomis seven dollars in full of all demands of every name and nature up to this day. Dated," &c.

The prisoners' counsel insisted that the receipt was not, while in the hands of Shepard, an instrument in respect to which larceny could be committed. The court, however, held and instructed the jury that the stealing of the receipt under the circumstances

proved constituted larceny.   The defendants excepted.   The
jury found a verdict of guilty against both.

*C. P. Kirkland,* for the defendants, insisted that to constitute
larceny of a written instrument, the paper stolen must be an
operative legal instrument which had taken effect by delivery;
and that the offence could not be predicated of the taking of
an instrument from the possession of its author which had not
been issued or delivered.   He referred to 2 *R. S.* 679, § 63; *id.*
690, § 1; *id.* 702, §§ 33, 34; *id.* 679, § 66; 2 *Russell & R.* 181;
2 *Leach's C. C.* 1036, 1061, *note (b),* 1090, 1119; 4 *Bl. Com.*
234, *note C; The King* v. *Phipoe,* 2 *Leach,* 673; 2 *East's
P. C.* 599; 2 *Russell,* 1119; *Todd* v. *Crookshanks,* 3 *John.* 432.

*C. Comstock,* (district attorney,) for the people, cited *Aicle's
case,* (1 *Leach,* 294;) 2 *East's P. C. ch.* 16, § 106, *p.* 675; 2
*Russ.* 120, 147; *Metcalf's case,* (1 *Mood. C. C.* 433;) *Heath's
case,* (2 *id.* 33;) *Ranson's case,* (2 *Leach,* 1090, *Russ. & Ry.*
232, *S. C. ;) Russell & Ryan,* 232; *Crone's case,* (*Jebb's Irish
C. C.* 47;) *The People* v. *Wiley,* (3 *Hill,* 194, 211.)

*By the Court,* BEARDSLEY, J.   At common law the only
description of property which could be the subject of larceny,
was personal *goods*—that is mere movables having an intrinsic
value.   The crime could not be committed of things which
savor of the realty, or of written instruments of any description.
(4 *Bl. Com.* 229, 232-4; 2 *Russ. on Cr. Phil. ed.* 1845, *p.* 2,
62, 70; 3 *Ch. Cr. L.* 916, 929, 931; 2 *East's P. C.* 553, 587,
597.)   But although such instruments could not, in strictness,
be stolen, the paper or parchment on which they were written
might be, and prosecutions for petty thefts of this description
have frequently taken place.   (3 *Chit. C. L.* 932; 2 *Russ. on
C.* 74 *to* 80; *Clarke's case, R. & R.* 181; *Vyse's case, Ry. &
Moo.* 218; *Reg.* v. *Morris,* 9 *C. & P.* 347; *Same* v. *Rodway,
id.* 784; *Rex* v. *Bingley,* 5 *id.* 602; *Same* v. *Mead,* 4 *id.* 535.)
By the former statute of this state, (1 *R. L. of* 1813, *p.* 174,)
to steal or take by robbery, amongst other securities named in

the act, "any bill of exchange, bond, order, warrant, bill or promissory note for payment of any money," "being the property of any other person or persons, or of any corporation," was declared to be a felony, "as it would have been if the offender had stolen or taken by robbery any other goods of like value, with the money due on," or secured by and remaining unsatisfied on any such security as aforesaid. The act of 2 *Geo.* 2, *ch.* 25, § 3, was in nearly the same words, and so far as is material now to be considered, it was precisely the same. (3 *Ch. C. L.* 932.)

It is well settled that to bring a case within the purview of the latter statute, the written instrument taken by theft or robbery, must not only have been made and executed in due form and manner, but must also have remained unsatisfied and in full force, so that, when taken, it was an effective and valuable security. The instrument, although complete in form and signature, and ready to be issued or delivered according to its design, could not, while in that state, be the subject of robbery or larceny. Nor could such an offence be committed in regard to a security, originally valid, but which had since been fully paid and satisfied, for it was no longer available for its original purpose, or of value to any one.

It was not a felony under this statute to steal banker's notes which had been completely executed but not issued, for no money was then due on them. (4 *Bl. Com.* 234, *note by Christian;* 2 *Ch. C. L.* 932; 2 *Russ. on C.* 79; *Roscoe's Cr. Ev.* 572.)

A check signed but not delivered, while it remains in the hands of the drawer, rests on the same principle, and is not a subject of larceny. (2 *Russ. on C.* 30 *to* 34, 81; *Walsh's case, R. & R.* 215.)

The stealing of banker's notes which have been issued and paid, although there was a right to re-issue them, was held not to be within this act. (2 *Russ. on C.* 74 *to* 77; *Clarke's case, R. & R.* 181; *Vyse's case, Ry. & Moo.* 218; 5 *C. & P.* 602, *note; Roscoe,* 572.)

And where a person was compelled by great violence to sign a note, which was taken away with intent to defraud the

signer of the amount, it was held not to be a case of robbery within this act, for the note was of no value to the prosecutor when received from him. (2 *Russ. on C.* 80, 81 ; *Rex* v. *Phipoe,* 2 *Leach's C. C.* 774; 5 *C. & P.* 602, *note ; 2 East's P. C.* 599.)

By chapter one, part four of the revised statutes of this state, the stealing of personal *property,* and not of personal *goods* merely, as at common law, is declared to be larceny. (2 *R. S.* 679, § 63, *p.* 690, § 1.) The term "*personal property,*" is defined in the same chapter, and declared to mean "evidences of rights in action, and all written instruments by which any pecuniary obligation, or any right or title to property real or personal, shall be created, acknowledged, transferred, increased, defeated, discharged or diminished." (*Id.* 702, §§ 33, 34.)

These provisions of the revised statutes are much more comprehensive than those of the third section of the act of Geo. 2, to which reference has been made, and extend to the stealing of many written instruments not embraced by the latter. The third section of the act of Geo. 2, was confined to written evidences of rights in action, or rights of that nature, and which, in this respect, were placed on the same footing with the money they were meant to secure. (4 *Bl. Com.* 234.) But the revised statutes go much farther, for they make it larceny to steal any written instrument by which "any right or title to property, real or personal, shall be created, acknowledged, transferred, increased, defeated, discharged or diminished," as well as such as are strictly "evidences of rights in action."

The act of Geo. 2, not only made it larceny to steal certain written securities, but also declared what should be taken as the value of the securities when stolen, which was "the money due" thereon, or secured thereby, and remaining unsatisfied. This too, as to all such written instruments as are made the subject of larceny by our law, is provided for by the revised statutes, for "if the property stolen consist of any bond, covenant, note, bill of exchange, draft, order or receipt, or any other evidence of debt, or of any public security, issued by the United States or by this state, or of any instrument whereby any de-

mand, right or obligation shall be created, increased, released, extinguished or diminished, (except such as are specified in the next section,)" (and which have reference to lottery tickets,) " the money due thereon or secured thereby and remaining un-satisfied, or which in any event or contingency might be col-lected thereon, or the value of the property transferred or affected thereby, as the case may be, shall be deemed the value of the article so stolen." (2 R. S. 679, § 66.) The original note of the revisers upon this section was in these words, "1 R. L. 174, much extended for the purpose of reaching every valuable private instrument." (3 R. S. 821.)

It perhaps admits of no doubt that a receipt for the payment of a debt or demand may be the subject of larceny, under the revised statutes, although it clearly would not be under the act of Geo. 2 ; but to make it such an instrument it must have been duly executed and delivered as evidence of the payment, so that at the time when stolen, it was a " valuable private instru-ment." No writing which is fictitious, whatever may be its form, or which, although genuine in signature, has not been made effective by being issued or delivered as a valid paper, can be the subject of larceny under our law. It must be, when stolen, an evidence of some right in action, or an instrument by which a right or title to real or personal property was in some manner affected. (§ 33, supra.) Money must be due or to become due thereon, or some demand, right or obligation, must have been° transferred or affected by the instrument stolen. (§ 66, supra.) In plain words, it must be a genuine and effec-tive instrument when stolen, or the crime of larceny cannot be committed. It was so under the act of Geo. 2, and such is the true meaning of the revised statutes.

The circumstances under which this paper was obtained by the prisoners, were very strong evidence of a felonious intent, and if the instrument had been of any value to the prosecutor, there would be no ground for interfering with the conviction. But when taken, the receipt was not effective for any purpose, being in the hands of the prosecutor utterly worthless ; and it is so still, not being now of the least value to any person what-

ever. In principle, therefore, it is precisely like cases which have arisen and been decided under the act of Geo. 2, and it must be disposed of in the same way. A written instrument is not the subject of larceny simply because it is genuine in signature, and has the form of a valuable obligation or security. It must be really valuable as a security or as evidence of right, which it never can be unless consummated by a complete execution and delivery of the instrument, and without this the crime cannot be committed. This is not such a case, and the prisoners should not have been found guilty.

We were referred, on the argument, to cases decided on the act of 7 and 8 *Geo.* 4, *ch.* 29, to show that written instruments, in the form of securities or evidences of debt, although wholly invalid, are by that act made the subject of larceny. It is unnecessary to enter into that question, for whatever the construction of that act may be, it will not aid us in determining the meaning of the revised statutes, the terms used being in many respects dissimilar. We think the revised statutes on this subject require that the instrument stolen should be valuable in the sense explained, and as this receipt was wholly worthless, the prisoners should have been acquitted.

New trial ordered.