The most material question in this case is, whether an action in the nature of trover can be maintained for a promissory note, which, never having been negotiated *Page 322 
when the defendant took it, had not any legal inception, and where the act charged upon the defendant as a conversion is the passing of the note to a bona fide holder. Upon general principles, I should say that a note in the hands of the maker or his agent, which had not been negotiated or in any way put in circulation, or which, having been negotiated, had been afterwards taken up and returned to the maker, was not property in any such sense as would render it the subject of larceny, or of trespass or trover; and that one, who should wrongfully get possession of such paper and give it vitality and value by passing it to a bona fide holder, would not be liable to such an action as the present, though the party injured could doubtless recover the damages which he might sustain by such an act, in an action in another form against the wrong-doer. (Harris v.Clark, 3 Comst., 93; People v. Loomis, 4 Denio, 380.) The question, however, is one of form, and if it appears that actions of this class to redress such an injury have been sanctioned by the courts, it must be considered as an exception engrafted upon the general principle, and the action should be sustained, though it should not be in accordance with theoretic rules. An examination of the cases will show that the exception has been firmly established. Murray v. Burling (10 John.,
172) was like the present in its essential features. The plaintiffs owed a debt which they had contracted for the accommodation of one Swan, and which would become payable on the 31st July, 1812. Swan informed them that the money to meet this engagement could be borrowed of one Kauman on the plaintiffs' note at sixty days. The plaintiffs accordingly, on the 26th July, made their note for the amount at sixty days, payable to the order of Swan, and delivered it to him to be negotiated to Kauman for the purpose of obtaining the money. Swan delivered the note to the defendant, who undertook to get the money of Kauman, who was his brother-in-law, and give it to Swan for the plaintiffs; but instead of doing so, he passed it off to *Page 323 
Minturn Champlin in payment of his own debt, and they procured it to be discounted at the Mechanics' Bank. When it became due the plaintiffs took it up and brought trover against the defendant for converting it, and it was held that the action was maintainable. Mr. Wells, of counsel for the defendant, took the same ground which is insisted on for the defendant in this case. "How can it be said (he argued) that the maker of a note, payable to another, has any property in that note?" The court say: "The note was put into the defendant's hands for a definite and specific purpose to pass to Kauman, and any other use of it was a violation of his trust. It is the abuse of trust, or the breach of such lawful possession, which constitutes the conversion." This case would be a precedent for the present action, if it had appeared that the defendant, knowing the object for which the note was made, had acted with the assent of Jones Co. in procuring it to be discounted for his own benefit or for any other purpose than to take up notes at the Manhattan Bank, upon which the plaintiff was liable. In Buck v. Kent (3 Verm.R., 99), it was held in a case where the payee of a note, which ought to have been delivered up to the maker, sold and transferred it to a third person who afterwards sued the maker thereon and recovered judgment, that trover would lie by the maker against the payee to recover the amount of the note.Evans v. Kymer (1 Barn. Adolph., 528) is an authority in point in the king's bench. A bill of exchange was drawn by one Nevett upon and accepted by the plaintiff for a specific purpose, viz: In order that it might be discounted, and that the proceeds might be applied in payment of two other bills drawn by Nevett upon and accepted by the plaintiff. That object was accomplished by other means, namely, by moneys furnished by the plaintiff, the acceptor. The bill remained in the hands of Nevett, subject to the order of the plaintiff. Afterwards Nevett delivered it to the defendant as security for his endorsing Nevett's note *Page 324 
for his accommodation, the defendant at the time knowing the purpose for which the bill was made. It was held that trover would lie, and that the measure of damages was the amount of the bill. These cases are decisive in favor of the action; and the one last referred to shows that the rule of damages sanctioned by the superior court was correct.
It is objected that the complaint does not state that the defendants negotiated the note to a bona fide holder, in violation of the object for which it was made. It does allege that the defendant Mathews illegally and wrongfully took the note from the possession of James Jones Co., and delivered it to the other defendant, and that they disposed of and converted it to their use. It was not under the former system, and is not, in my opinion, now, necessary to state the manner in which the defendant has converted property for which trover is brought; but the simple allegation that he has done so is sufficient. Where it is once settled that negotiable paper in the hands of the maker or acceptor is the subject of an action of trover, the allegation that the defendant has converted it refers to some act by which such property thus situated could be converted.
There was no sufficient exception to the charge; and as to the request to charge upon specific propositions, the matter proposed seems to me to be fairly covered by the instructions which the court gave, including the points which he directed them to find specifically.
Upon the whole case, I am of opinion that the judgment ought to be affirmed.
Judgment accordingly *Page 325