## THE PEOPLE *v.* DENNIS CAMPBELL.

The court cannot acquire jurisdiction to try an offence by consent, nor can the averments in an indictment be changed by consent, so as to embrace any other than those presented by the grand jury.

Where, on demurrer to an indictment for larceny in stealing a dog it was stipulated that the indictment should be considered as alleging that the dog in question had been reclaimed and made tame and domestic, and that the defendant, knowing it to be such, feloniously took and carried it away: *held*, that the stipulation should be disregarded in deciding the demurrer.

A dog, though property, so as to enable the owner to maintain an action of trespass for an unlawful taking, was not the subject of larceny at the common law; but under the provisions of the statute declaring all personal property the subject of larceny, an indictment for stealing a dog will now be sustained in this State.

THIS was an indictment for grand larceny alleged to have been committed in stealing a dog. The defendant demurred. A stipulation between the parties, the substance of which is set forth in the opinion of the court, was submitted with the pleadings on the argument.

The People *v.* Campbell.

The following opinion was given by

RUSSELL, J. The defendant was indicted at the last March term of this court, for grand larceny, in stealing (as averred) one dog of the value of $50, and one collar, of the value of $1, the property of Jeronomus S. Underhill. A demurrer to the indictment was argued before me at the last July term, on the ground that the stealing of a dog was not an offence by the laws of this State. Accompanying the indictment was a stipulation that it be considered as alleging that the dog in question was reclaimed, and made tame and domestic; and that the defendant, knowing it to be such, feloniously took and carried it away ; and further, that the averment in the indictment as to the theft of the collar be deemed to have been omitted. The object was to present the question as though the indictment had been framed upon the simple felonious taking of the dog. It is impossible for the court to consider this stipulation in deciding the question as to whether a dog is property so as to be the subject of larceny. If it should be determined that a dog is not the subject of such an offence, the indictment would stand for the collar, which would make it in effect an indictment for petit larceny. If it should be so determined, and the prosecution cannot support the charge of stealing the collar, then, of course, the District Attorney would *nol. pros.* the indictment. No stipulation of this character can affect the structure of the indictment as it emanated from the grand jury. The charge, as made, being a felony, the Constitution of this State requires the presentment or indictment of a grand jury as a pre-requisite to trial ; and if the pleading they file with the court could be remodeled by stipulations between the counsel, the defendant would not be tried upon the presentment of the grand jury, but rather upon the consent of the counsel.

This court cannot acquire jurisdiction to try an offence by consent, nor can its jurisdiction over an offence be changed by consent so as to embrace any other than that presented by the grand jury, where the action of that body is requisite. If the form of an indictment does not suit a prosecuting officer, his

only remedy is by reindicting. On the trial of an indictment, certain omissions can be disregarded by the court (2 *R. S.*, 728, 352); but unless the power is conferred by statute, or is warranted by the acknowledged rules of pleading, the court is not vested with it. The right does not extend to adding to or expunging from the indictment substantial allegations. In the case of *Cancemi* v. *The People* (18 *N. Y. R.*, 128), in which it was held that a prisoner could not consent to be tried by less than the constituted number (twelve) of jurors, Strong, J., who delivered the judgment of the Court of Appeals, uses this language: "There is obviously a wide and important distinction between civil suits and criminal prosecutions as to the legal right of a defendant to waive a strict, substantial adherence to the established constitutional statutory and common law mode and rules of judicial proceedings." The present indictment is a constitutional mode of proceeding, within the principle of this remark, and the defendant can waive no legal right by any consent he may give in reference to its important averments.

I have concluded to pass upon the question presented, and which was argued with ability on both sides, for the purpose of fixing the character of the indictment as to being one for grand or petit larceny.

At the common law, larceny could be committed of domestic cattle, *i. e.*, sheep, oxen, horses, &c., or of domestic fowls, *i. e.*, hens, ducks, geese, &c., because, according to Lord Hale, they were "under propriety," and served for food. So, as to beasts or birds, *feræ naturæ*, which were reclaimed and made tame or domestic, and served for food; *i. e.*, deers, pheasants, partridges, &c., if the thief knew them to be tame. It could not be committed as to some things whereof the owner might have a lawful property, and "such whereupon he might maintain an action of trespass"—*i. e.*, mastiffs, spaniels, greyhounds, bloodhounds, by reason, as Lord Hale says, of the baseness of their nature; nor of some things wild by nature, yet reclaimed by art or industry—*i. e.*, bears, foxes, ferrets, &c., because they served not for food, but pleasure. (1 *Hale's P. C.*, 510, 511.)

The same rules are stated in substance in 2 *East. P. C.*, 607, 614, except as to dogs, because when this author wrote, the statute 10 *Geo.* III, *c.* 18, was in force, making the stealing of dogs punishable upon a conviction before two justices. Blackstone repeats the same rules (4 *Bl. Com.*, 235, 236), and says that " dogs of all sorts, and other creatures kept for whim and pleasure, though a man may have a sort of base property therein, and maintain a civil action for the loss óf them, are not of such estimation as that the crime of stealing them amounts to larceny." If this author means to say that a civil action could be maintained for the value of dogs, if wrongfully taken, it is difficult to see why they were not within the protection of the criminal law at the time he wrote. It will be observed, too, that instead of using the term baseness in connection with the nature of dogs, he uses it to stamp the kind of property which can be possessed or enjoyed in them.

As such parts of the common law as formed the law of the Colony of New York on the 19th day of April, 1775, have been retained by the Constitution of this State, subject to the power of the Legislature to alter them (*Const.*, art. 1, § 17), and as dogs were not the subject of larceny at the common law at that time, it is proper to consider whether the Legislature has altered the common law in this particular. At common law the only description of property which could be the subject of larceny, was " mere movables having an intrinsic value." Things savoring of the realty and written instruments were added by statutes. (*The People* v. *Loomis*, 4 *Denio*, 380.) The statutes of this State have extended the law of larceny further than the English statutes did. (*Ib.*) By the 2 *R. S.*, 679, section 363, it is provided that " any person who shall be convicted of the felonious taking and carrying away the personal property of another, of the value of more than twenty-five dollars, shall be adjudged guilty of grand larceny," &c. " Personal property," as here used, is defined by a subsequent section (2 *R. S.*, 702, § 33), "to mean goods, chattels, effects, evidences of rights in action and all written instruments," &c.

Sections 64 and 65, increase the offence if committed in a dwelling house, or in a ship or other vessel, or if committed by stealing in the night-time from the person of another. Section 68 relates to the offence of severing produce from the soil of another, or property from the building of another, to the value of more than twenty-five dollars—which was not larceny at the common law. Sections 66 and 67 were intended rather to be rules of evidence than to serve to create or designate any distinct offences. They relate to written instruments—*i. e.*, bonds, covenants, notes, bills of exchange, drafts, orders, receipts, lottery tickets, &c., and provide for ascertaining the value of such securities, or declare what shall be their value, if stolen, considered as the subjects of larceny. They commence thus: " If the property stolen consist of any," &c., showing that the particular property referred to is " personal property," within section 63. Section 69 relates to the stealing of the records, &c., of courts of justice. Since the Revised Statutes went into operation, the Legislature have made the offence of stealing railroad passenger tickets, before the sale thereof, or before being issued to the agents of the companies for sale, the subject of larceny. (3 *R. S.*, 5th ed., 959, 960, §§ 75, 76, 77.) This is a new crime, and would not have been the subject of larceny under *The People* v. *Loomis*, cited above. As the law stood, these tickets would have had no value until they had been issued by their respective companies.

As I understand section 63 of the statute, it is meant to define the offence of grand larceny in reference to personal property, and to declare that everything which is personal property, which can be, or is held or enjoyed as personal property, is within the protection of the statute. It appears as though the Legislature, instead of entering upon a minute statement of the kinds or species of personal property which could form the subject of larceny, designed that this section should be construed in the most comprehensive manner. It is not more indefinite than is that still more comprehensive provision of the Constitution of this State, that no person shall be " deprived of life, liberty or property, without due process of law." If

the meaning of the term "property" can be ascertained in the latter case, the meaning of the terms "personal property" certainly can be in the former.

The provision of the Constitution underwent judicial consideration in the case of *Wynehamer* v. *The People* (3 Kern., 378). That case will be remembered as involving the constitutionality of the late law to prevent intemperance in this State, the Court of Appeals deciding against the law. Comstock, J., in his opinion (*p.* 396), uses this language: "Now, I can form no notion of property which does not include the essential characteristics and attributes with which it is clothed by the laws of society. In a state of nature property did not exist at all. Every man might then take to his use what he pleased, and retain it, if he had sufficient power; but when men entered into society, and industry, arts and sciences were introduced, property was gained by various means, for the securing whereof proper laws were ordained." (*Tomlin. Law Dic.* "*Property*," 2 *Bl. Com.*, 39.)

"Material objects, therefore, are property in the true sense, because they are impressed by the laws and usages of society with certain qualities, among which are, fundamentally, the right of the occupant or owner to use and enjoy them exclusively, and his absolute power to sell and dispose of them; and as property consists in the artificial impression of these qualities upon material things, so whatever removes the impression destroys the notion of property, although the things themselves may remain physically untouched."

If what is or what is not property depends upon the laws or usages of society, it would be impossible to say that the quality of the exclusive right of the owner to the use or enjoyment of his dog—his absolute power to sell and dispose of it, and the other characteristics and attributes of property—had not been impressed by these laws and usages upon that useful animal. If property is a notion of society—if common consent is the basis of or requisite to its recognition or maintenance—for none of the brute creation could this principle be claimed with more propriety or truth than this one.

Assuming, then, that property is something which can be appropriated or donated to one's exclusive use or enjoyment—something which can be sold or otherwise disposed of at will—something, for a violation of our rights, in relation to which the law provides adequate remedies—something which it is not unlawful to hold, and which, therefore, the law is bound to guard us in the possession of—the inquiry arises, how are dogs looked upon or considered by the law.

In *Putnam* v. *Payne* (13 *John. R.*, 312), it was held that any person is justified in killing a ferocious and dangerous dog, which is permitted to run at large by its owner, or to escape through negligent keeping, the owner having notice of its vicious disposition. The action in the court below was to recover for the killing of a dog. The plaintiff had judgment; but the Supreme Court reversed the judgment, for the reason that, under the circumstances, the dog was properly killed. There was no question but what, if the dog had been improperly killed, the action would have been maintainable. This case concedes that there can be and is property in a dog. Whether absolute or qualified is immaterial—it is enough to satisfy our statute against the felonious taking of personal property, that there can be, or is any. In *Hinckley* v. *Emerson* (4 *Comst.*, 351), the right of property in a dog was expressly recognized. It was a similar action. The plaintiff, in the court below, proved the value of the dog to be ten or fifteen dollars, and had judgment; and the Supreme Court, on error, affirmed the judgment. The statute allowing dogs attacking sheep to be killed, was referred to by the court as proof that but for the statute the right did not exist. In *Bull* v. *Flagler* (23 *Wend.*, 354), which was an action of trespass for killing a dog, it was held that, though under proper circumstances the killing of a dog was justifiable, a needless or wanton destruction of the animal, even to prevent an acknowledged mischief, would be unjustifiable.

It was also held that the opinions of witnesses as to the nature of a dog, for whose destruction an action was brought, were admissible in evidence. In *Dunlap* v. *Snyder* (17 *Barb.*,

The People *v.* Campbell.

*S. C. R.*, 561), which was a similar action, the Supreme Court of the fourth district did not question the right to maintain an action for the improper killing of a dog. They reversed the judgments of the Justice and County Court, among other reasons, because the opinions of witnesses as to the value of the dog were received in evidence, thus rejecting upon that point the authority of the case of *Bull* v. *Flagler*. In *Cowen's Justice* (4*th ed.*, § 563), in treating "of actions for taking, detaining or injuring personal property," it is said, the terms "personal property," as used in the Code of Procedure, include money, goods, chattels, things in action and evidences of debt, and, with the exception of real estate, everything in which one can have a valuable interest, instancing, among other things, a dog. In section 538, it is said, "A man has such an ownership in a dog, a cat, or any wild animal, which he has acquired a property in by possession, that he may recover damages for any injury to it." From these authorities I conclude that, if an action can be brought to repossess one of a dog, of which he has been unlawfully deprived, or if, in case the dog has been killed, an action can be brought to recover its value, and if, on the trial, its value is matter of proof, as that of any other admitted item of property, even though in certain extreme cases the dog may legally forfeit its existence to a stranger against the will of its owner, nevertheless, that there are sufficient of the characteristics or attributes of property about it to make it a subject of protection within the statute defining grand larceny. In the *People* v. *Maloney* (1 *Park. Cr. R.*, 593), it was held, for the purposes of a writ of *habeas corpus*, that a dog was the subject of larceny. It is provided by statute (2 *R. S.*, 5*th ed.*, 974, § 1), that a tax upon dogs shall be annually levied and collected in all the counties of this State, except the county of New York, and the statute fixes the rate of tax, and the mode in which it shall be collected. It is also similarly provided that any person may kill a dog which he shall see "chasing; worrying or wounding any sheep," unless it is done by the direction of the owner of the sheep, or his servant.

It is also provided that a justice of the peace may order the killing of any dog that shall attack a traveler on the highway, or a horse attached to a carriage, or upon which any person shall be mounted; and that any person in possession of a dog, or who shall suffer it to remain about his house for the space of twenty days previous to the assessment of a tax, or to any injury (as specified) done by the dog, shall be deemed its owner for all the purposes of the statute. The statute also imposes penalties where the owner refuses to kill a dog when legally directed or ordered to do so. I think these statutes demonstrate that the Legislature· meant to treat dogs as property, protecting and controlling them, so far as the public good or safety permits or justifies.

In the year 1857 a law was passed in this State providing for the "incorporation of associations for improving the breed of domestic animals." It declares that any corporation formed under it shall have power to raise, import, purchase, keep, breed and sell all kinds of domestic animals. Why are not dogs within the purview of this statute? Although not ranked among domestic animals in the time of or by Lord Hale, yet the estimation in which they have been since· held by society shows that they are no longer considered to be so base as not, on that account, at least, to be the subject of larceny.

If by domestic is meant "belonging to the house," who can deny this attribute to the dog? What animal more domestic? What one appreciates a home more, shows stronger attachments to it, or if it strays from it, is more certain to return to it? In some of its species it serves as a pet or a companion. In others, it assists and takes part in manly sports and recreations. In others, again, it is the faithful custodian and guardian of property. In none, it may be said, is it entirely divested of usefulness. When the benefits it confers are reflected upon, why is there not a perfect propriety in improving the breed of such an animal? If it comes within the description of domestic animals under this act of 1857, it is certainly property, the subject of larceny.

If the indictment in the present case should show that the dog in question was "reclaimed and made tame and domestic," and that the defendant, with a knowledge of this, stole the dog, which would seem to have been necessary at the common law in reference to animals *feræ naturæ* (2 *East. P. C.*, 607), it cannot be sustained in its present form. Under the view I entertain, this is not necessary. The indictment shows that the dog was the property of the prosecutor, that it had a certain value, and that it was feloniously taken from his possession. Whatever else must be proved on the trial, can be proved under these averments.

If the court receives evidence it should not, under the indictment as drawn, the defendant can have his remedy by bill of exceptions.

My judgment is, that the indictment is good as one for grand larceny, and judgment must be rendered for the People on the demurrer, with liberty to the defendant to plead to the indictment.

Judgment for plaintiff.