## THE STATE v. PORTER, *Appellant.*

1. **False Pretenses**: OBTAINING A NOTE FROM THE MAKER. It is an offense indictable under section 1561, Revised Statutes 1879, to procure the making and delivery of a promissory note by false pretenses, and this without regard to the value of the note, or whether it is negotiable or not. A note is a "valuable thing" within the meaning of that section. An indictment would also probably lie under section 1335; but the punishment authorized by that section is only what could be inflicted for the larceny of the paper on which the note is written.

2. ———: ———: PLEADING, CRIMINAL. While an indictment under section 1561 for obtaining the signature of the maker to a promissory note by means of a trick or false pretense or false and fraudulent representation, by the express provision of that section is good without stating of what the trick consisted or what the pretense or fraudulent representation was, it must not be in the alternative or disjunctive, but must allege that the signature was obtained by one of the means specified, or if by more than one it must allege those relied upon conjunctively. It is better pleading, however, to state of what the trick consisted or what the pretense or fraudulent representation was.

3. **Practice, Criminal:** WITNESS. Under the present statute, (R. S. 1879, § 1918,) a defendant in a criminal case offering himself as a witness in his own behalf, can be cross-examined only as to matters of which he testified in chief.

*Appeal from Randolph Circuit Court.*—HON. G. H. BURCK-HARTT, Judge.

REVERSED.

*O. T. Rouse* for appellant.

The indictment is defective in this, that it does not allege and negative the pretense, and does not allege that Williams believed the pretense to be true and by reason thereof signed the note. R. S. 1879, § 1335; *State v. Evers,* 49 Mo. 542; *State v. Bonnell,* 46 Mo. 395; *State v. Saunders,* 63 Mo. 482. The offense aimed at by section 1561 is the obtaining of money or "property" by false pretenses. *State v. Fancher,* 71 Mo. 460. A note is not the property

of the maker. This note was not the property of Williams, but when delivered belonged to the defendant. Before that it was not property. Hence, defendant could not be indicted for obtaining it. It was error to require defendant to testify on cross-examination as to matter not referred to in his testimony in chief. R. S. 1879, § 1918. The note is not negotiable. It had not the words "for value received." R. S. 1879, § 547.

*D. H. McIntyre*, Attorney General, for the State.

The indictment follows the language and is in the form given by the statute, section 1561, and is sufficient. A promissory note is a valuable thing and comes within the meaning of the statutory prohibition. *State v. Fancher*, 71 Mo. 460; *State v. Connelly*, 73 Mo. 235 ; *State v. Thatcher*, 35 N. J. L. 445 ; 2 Bish. Crim. Law, (6 Ed.) § 157. It is immaterial that the note was non-negotiable. 35 N. J. L. 445.

HENRY, J.—Appellant and one Turner were jointly indicted at a special term of the Randolph circuit court held in June, 1881, and appellant was convicted and sentenced to imprisonment in the penitentiary for a term of three years, on the following indictment, omitting the caption :  " T. G. Porter and N. R. Turner, late of the county of Randolph aforesaid, on the 25th day of May, 1881, at Moniteau township, in Randolph county, and State aforesaid, within the jurisdiction of said circuit court, with intent to cheat and defraud, did unlawfully and feloniously obtain from William C. Williams a certain valuable thing, to-wit: a promissory note for the sum of $750, and of the value of $750, executed by the said William C. Williams and indorsed in blank across the back by the said William C. Williams, by means and by use of certain false and fraudulent representations and statements and false pretenses, contrary to the form of the statute in such cases

made and provided, and against the peace and dignity of the State."

The evidence for the State tended to prove that defendant and Turner went to the prosecutor's house and represented themselves as agents of the Western Medical works of Indianapolis, Indiana, authorized to appoint agents to vend its medicines, and induced the prosecutor to accept an agency, and sign what the latter supposed to be a contract by which he was to receive a certain amount of medicines to sell on commission, etc., which, he afterward discovered, was a promissory note executed by, payable to, and indorsed by himself, and delivered to the defendant, for the sum of $750 ; that the defendant procured his signature to the note, by pretending to read what he represented to be a copy of the same, but which was a different paper, imposing no such obligation on the prosecutor.

Section 1335 of the Revised Statutes, is as follows :. "Every person, who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by any other false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, right in action, or other valuable thing or effects whatsoever, and every person who shall, with the intent to cheat and defraud another, agree or contract with such other person, or his agent, clerk or servant, for the purchase of any goods, wares, merchandise or other property whatsoever, to be paid for upon delivery, and shall, in pursuance of such intent to cheat and defraud, after obtaining possession of any such property, sell, transfer, secrete or dispose of the same, before paying or satisfying the owner or his agent, clerk or servant therefor, shall, upon conviction thereof, be punished in the same manner, and to the same extent as for feloniously stealing the money, property or thing so obtained."

Section 1561, reads as follows :: "Every person who,.

with intent to cheat and defraud, shall obtain or attempt to obtain, from any other person or persons, any money, property or valuable thing whatever, by means or by use of any trick or deception, or false and fraudulent representation or statement or pretense, or by any other means or instrument, or device commonly called the ' confidence game,' or by means or by use of any false or bogus check, or by any other written or printed or engraved instrument or spurious coin or metal, shall be deemed guilty of a felony, and upon conviction, etc.," fixing the punishment at not less than two years in the penitentiary; and provides that in every indictment under this section, " it shall be deemed and held a sufficient description of the offense to charge that the accused did on ————, unlawfully and feloniously obtain or attempt to obtain (as the case may be) from A. B. (here insert the name of the person defrauded) his or her money or property, by means and by use of a cheat or fraud or trick or deception or false and fraudulent representation or statement or false pretense, or confidence game, or false and bogus check, or instrument, or coin, or metal, as the case may be, contrary to the form of the statutes," etc.

Under this section the indictment was found, and defendant's counsel insist that he should have been indicted, if at all, under section 1335.   The evidence tended to prove that defendant had, by a trick, a false pretense, and a fraudulent representation, procured the signature and delivery by the prosecutor to the defendant, of a note, executed by, payable to, and indorsed by the prosecutor for the sum of $750.

We are inclined to the opinion that the facts would have made out a case against him under section 1335, but

1. FALSE PRETENSES: obtaining a note from the maker.

by a singular oversight, under a misapprehension of the law, the general assembly in that section provided a punishment for this offense, wholly inadequate to its enormity.   One guilty of a violation of that section is punishable only in the same

manner and to the same extent, as for feloniously stealing the money, property or thing so obtained. The punishment, therefore, would depend upon the amount of money, or the value of the property or thing so obtained, because the value would determine whether the punishment should be that provided for grand larceny or that inflicted for petit larceny.

At common law mere choses in action, as bonds, bills and notes, were not goods whereof larceny could be committed, as being of no intrinsic value, and not importing any property in the possession of the person from whom taken. Russ. on Crimes, 69 ; *People v. Loomis*, 4 Denio 382 ; *Wilson v. State*, 1 Port. 120. Our statutes have not changed the common law in this respect, except as to notes which have been delivered to the payee by the maker, or indorser thereof. They are, in the hands of the payee, or indorsee, subjects of larceny. It follows, that the only punishment for obtaining a promissory note from its maker, by means of a false token, or other false pretense, is that prescribed for petit larceny, no matter what amount is expressed as payable in the note. At common law, the note in the hands of the maker was not the subject of larceny, and for stealing such an instrument the offender could only be punished for stealing the paper on which it was written. " There may be larceny of paper, however slight its value, since it has some value, and if the paper is written on, still its value is not entirely destroyed." Bishop Crim. Law, § 768. "The distinction in England, therefore, is, that if a chose in action is so defective as to be void, or if a promissory note has been paid, an indictment may be maintained for stealing the price of the paper on which it is written." Ib. "This article may be worth less than the smallest sum known to the law." § 767.

For obtaining any money, property or valuable thing whatever, by means mentioned in section 1561, the punishment, on conviction, without regard to the value of the thing so obtained, is imprisonment in the penitentiary for

a term not less than two years. In the case at bar, by reading what the prisoner represented to be a copy of the instrument to be signed by the prosecutor, but which, in fact, was not a copy, or, if a copy, was purposely misread by him to the prosecutor, he induced the latter to sign an instrument of a different import from that read by the defendant, and so obtained the signature and the note by a. trick, a deception, a false pretense, and a false representation, and was indictable under section 1561, without regard to the value of the paper, as a promissory note.

The case of the *People v. Loomis*, 4 Denio 382 ; *Wilson v. State*, 1 Port. 120; Bishop Crim. Law, and other cases. and text books have been cited in support of the proposition that the note in question was not the subject of larceny, either at common law or under statutes which make it larceny to steal a written instrument, "by which any right or title to property, real or personal, shall be created, acknowledged, transferred, defeated, discharged or diminished, or which induce a right of action." Such was the statute of New York under which the *People v. Loomis* was decided, in which it was held that : "The written instrument taken by theft or robbery must not only have been made and executed in due form and manner, but must also have remained unsatisfied and in full force, so that when taken it was an effective and valuable security. The instrument, although complete in form and signature, and ready to be issued, or delivered according to its design, could not, while in that state, be the subject of robbery or larceny."

These cases, unquestionably sound in principle, are not applicable to the one at bar. Section 1561 does not declare what property shall be the subject of larceny. It does not declare the offense therein defined to be larceny. It is a statutory crime, and the section was obviously enacted in view of the law as settled by the class of cases above cited, and to provide an adequate punishment for a crime as heinous as larceny, but which was not larceny

either at common law or under our statutes.    It makes it a
felony for one, by any of the fraudulent means mentioned
therein, to obtain from another, any money, property or
valuable thing whatever.   Did the defendant obtain a thing
of any value when he procured the note in question?   It
was of no value to the prosecutor, but the statute does not
declare that the thing obtained shall be of value in the
hands of the person from whom it is obtained, but that
if a person, by the false means mentioned, shall obtain a
thing of any value, the offense is committed.    Statutes
like this are not to be confounded with those which de-
clare that property and choses in action shall be subjects
of larceny, which were not so at common law.

The note obtained was in form a non-negotiable prom-
issory note, and while open to any defense the maker
might have against it in the hands of any one holding it
by indorsement or otherwise, was still of some value as a
promissory note.  Contingencies might have occurred which
would have enabled the holder, even the accused, to collect
the amount.    If the maker had died leaving the note out-
standing, it would have been impossible to prove the fraud
by which it was obtained.

The indictment is in the form prescribed by the stat-
ute.    That form is sufficient, but, while it may not be nec-
2. ——— : ———:  essary to allege more than that the signature
pleading,criminal  was procured by means of a trick, or false
pretense, or false and fraudulent representation, without
stating of what such trick consisted, or what the pretense
or false representation was, it must not be in the alternative
or disjunctive, but must allege that the property was ob-
tained by one of the means, or, if by more than one of
those specified, allege those relied upon conjunctively.   In
this respect this indictment is not objectionable.  We think,
however, that the better pleading is to state of what the
trick consisted, or what the pretense, or false representa-
tion, etc., was.

The court erred in permitting the State's attorney to

12—75

cross-examine the defendant in relation to matters to which

**3. PRACTICE, CRIMINAL: witness.** he did not testify in his examination in chief. Under the act of 1877, it was held, in the *State v. Clinton*, 67 Mo. 380; *State v. Cox*, 67 Mo. 392; *State v. Rugan*, 68 Mo. 214, and *State v. Testerman*, 68 Mo. 408, that if a defendant in a criminal cause availed himself of the privilege of testifying in his own behalf, the same latitude of cross-examination would be allowed the State as in the case of any other witness; but that act was amended at the last session of the general assembly, (see § 1918, R. S.,) and he now can be cross-examined only as to matters testified to by him in his examination in chief. We presume that this section was overlooked by the learned judge who presided at the trial of this cause. For this error, the judgment is reversed and the cause remanded. All concur.