## THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* HENRY K. STEVENS, APPELLANT.

*Larceny — an undelivered satisfaction-piece of a mortgage is not the subject of larceny — Penal Code, secs. 528. 718, sub. 15, 536.*

The defendant having agreed to purchase, free from incumbrances, a house and lot in the city of Buffalo, the owner thereof sent to her agent in that city, a deed of the premises and also an instrument satisfying a mortgage upon the property which mortgage was held by her sister. The satisfaction-piece was in proper form, and duly signed and acknowledged by the mortgagee, but the debt which it purported to satisfy had not in fact been paid, and the satisfaction-piece had been placed in the hands of the mortgagor, and had been by her sent to the agent with the understanding that it was only to be used upon the happening of certain conditions.

The defendant, by means of false and fraudulent representations, and without compliance with the conditions imposed, procured possession of the satisfaction-piece from the agent and caused it to be placed on record.

*Held,* that as the satisfaction-piece had never been delivered, it was not when taken by the defendant the subject of larceny, and that he could not be convicted of that crime.

APPEAL from the judgment of the Erie County Court of Sessions, based upon a verdict convicting the defendant of the crime of grand larceny in the first degree, under which he was sentenced to imprisonment for a period of five years.

Ella S. Comstock was the owner of a house and lot in the city of Buffalo and she entered into an executory agreement in writing, to sell and convey the same to the defendant. Upon this property there was a lien by mortgage executed by Ella S. Comstock to one

Sarah Comstock, to secure an indebtedness of $1,500, and the same was recorded in the Erie county clerk's office. By the terms of the sale the premises were to be conveyed to the defendant free of this incumbrance. Without paying the debt the mortgagor procured to be placed in her hands by the mortgagee a discharge of the lien, to be used upon certain conditions. The words of discharge after describing the mortgage are as follows: "is paid, and I do hereby consent that the same be discharged of record." The mortgagee resided in this State and the mortgagor in the State of Louisiana, and the latter, with a view of closing the transaction with the defendant, placed in the hands of one Walker the discharge and a deed of the premises; thereupon he called upon the defendant in the city of Buffalo and before the deed was delivered placed the discharge in the hands of the defendant, who caused the same to be placed on record. Before receiving a deed of the premises the defendant, without the consent of the owner, entered into possession of the premises. Misunderstandings and disagreements arising between the parties, several suits were commenced in which the defendant and his vendor were parties. The evidence tended to prove that the defendant was guilty of mis-statements and false representations in procuring possession of the discharge from Walker and that his actions were fraudulent, and that the act of placing the discharge upon record was fraudulent and against the wishes of the parties to the mortgage, and without the consent of Walker the custodian of the same at the time it was delivered into the possession of the defendant.

The act on which the charge of larceny was based was the alleged stealing of the discharge, and in the indictment it was averred to be the property of Walker and of the value of $1,500.

*Joseph P. Carr*, for the appellant.

*George T. Quinby*, assistant district attorney.

BARKER, J.:

The important and underlying question presented by the appeal is this, was the written instrument set forth in the indictment, called a discharge of the mortgage, the subject of larceny? It is conceded by the counsel for the people that Sarah Comstock, the mortgagee, who executed the instrument, had not been paid the

debt secured thereby and that she placed the discharge in the hands of the mortgagor to be used by her upon the happening of certain conditions and in exchange of certain other securities in lieu thereof. The prosecution was conducted upon the assumption that these facts were true, and the court submitted to the jury legal propositions to be applied by them if they should so find the facts. The defendant acquired the possession of the instrument from the hands of Walker, the custodian, with his consent. The people claim that such actual possession by the defendant was acquired by means of deceit and false pretenses practiced upon Walker with the intent to cheat and defraud the mortgagee, and that the act of the defendant in thus securing possession of the discharge and placing the same on record, was larceny as that offense is now defined.

It will simplify the question now under consideration if we consider the case the same as if the defendant had taken the written instrument from the possession of the mortgagee *vi et armis* and against her consent. If such an act would not constitute larceny, for the reason that an undelivered instrument of this nature is not the subject of larceny, then very clearly it was not larceny on the part of the defendant to acquire possession of the same from Walker, the custodian, by means of fraud and deceit practiced on him by the defendant. The custody of Walker was, under the circumstances of the case, in law the custody of the maker of the instrument. It is the general rule that to constitute larceny of a written instrument, the paper must be effective and operative when taken. Was this instrument effective and operative for any purpose when the defendant acquired the possession? I think not. It had never been delivered, nor was it intended to be used for the purposes therein mentioned until the performance of certain things thereafter to take place. The debt it was intended to secure remained unpaid. The possession of the paper by the defendant did not, nor did its record, and could not in law, release the debt nor discharge the land from the mortgage lien. Until the instrument was delivered to some one by the maker for the uses and purposes expressed therein, it possessed no value and was not personal property, in the sense and meaning of that term as defined by the statute. The instrument, although complete in form and bearing the signature of the mortgagee and duly acknowledged, ready to be delivered and

used according to its design, could not, while in this state, be the subject of larceny. (*People* v. *Loomis*, 4 Denio, 380.)

By the common law larceny could only be committed of personal goods, mere movables having an intrinsic value. By the Penal Code it is larceny to steal the personal property of another. (Sec. 528.) The same provision existed in a former statute. The term personal property as there used, is defined to mean and include " every description of money, goods, chattels, effects, evidence of rights in action, and all written instruments by which any pecuniary obligation, right or title to property, real or personal, is created, acknowledged, transferred, increased, defeated, discharged or dimin-- ished, and every right and interest therein." (Penal Code, sub. 15, § 718.) This definition of the term personal property is only new in form, the various previous enactments on the subject having been simply collected and consolidated. (2 R. S., 702, § 33.) As no statute enlarging or changing the definition of personal property has been enacted since the decision of the *People* v. *Loomis*, that case stands as an authority in construing the statute as it now reads. The new statute defining the crime of larceny has enumerated the kind of written instruments which may be the subject of larceny, although they have not been issued or delivered for use as follows : " An instrument for the payment of money, an evidence of debt, a public security, or a passage ticket, completed and ready to be issued or delivered, although the same has never been issued or delivered by the maker thereof to any person as a purchaser or owner." (Penal Code, § 536.) This provision does not embrace instruments intended to be used as a release of a debt or a discharge of a mortgage lien. As such instruments are not included in the enumeration it creates a strong presumption that it was not the purpose and intention of the legislature in creating and defining the offense of larceny to embrace written instruments of this nature, which were not effective and operative at the time they were taken. If this instrument had been delivered so as to be effective as a discharge of the mortgage, it then would be property in the hands of any person interested in the premises and would be the subject of larceny if feloniously taken from the possession of a rightful holder, and then it would be personal property as defined by the statute already quoted.

The case of *Phelps* v. *The People* (72 N. Y., 334) does not support the argument of the learned district attorney. It was there held that the draft, which was the subject of the larceny as charged in that case, was a legal operative instrument when it reached the hands of the defendant. It has been held in this State (*People* v. *Wiley*, 3 Hill, 194,) that bank bills, complete in form and ready for circulation, but not in fact issued, are the property of the bank and may be the subject of larceny. The facts of the case were such as to form an exception to the general rule as it then existed as to unissued instruments. Bank bills when stolen and in the possession of the thief are as valuable to him as if the same had been issued and in circulation, and he has it in his power to ruin the bank by their use. Bank bills in that form pass from hand to hand like coin and when stolen the payee, to whom they are passed, takes a perfect title to the same. Although not put in circulation by the bank, they may be properly considered money in its hands when complete in form and ready for circulation. The *bona fide* holder acquires a perfect title as against the bank, and as the bank has a title to the paper on which the instrument is printed, it is not unreasonable to hold as matter of law, as against the thief, that such bills in the hands of the bank are each of the value of their respective denominations. This and nothing more was decided in Wiley's case. The rule of that is now incorporated in the statute. There was no rule of law laid down nor any principle asserted in that case which supports the argument that this instrument, when taken by the defendant, was operative and effective for any purpose.

The judgment should be reversed and a new trial granted.

SMITH, P. J., and BRADLEY, J., concurred.

Judgment and conviction reversed and new trial ordered in the Court of Sessions of Erie County, to which court the proceedings are remitted.