Points decided.

[Filed December 16, 1886.]

# STATE *v.* W. W. SAUNDERS.

CRIMINAL LAW—EVIDENCE—DYING DECLARATIONS — DISCRETION OF COURT. —In a prosecution for murder, the dying declarations of the person alleged to have been murdered are competent against or for the accused. The admissibility of such evidence is not confined to cases in which no other evidence of the killing is obtainable, but is in the sound discretion of the trial courts.

SAME—MUST BE CONFINED TO FACTS, NOT CONCLUSIONS.—Such declarations are permitted only as to those facts as to which the deceased would have been competent to testify if sworn in the case. But the statement of the deceased concerning the defendant, that " he shot me down like a dog," is not such a conclusion as to be excluded under this rule.

SAME—CONSTITUTIONAL LAW.—The constitutional provision that in all criminal prosecutions the accused shall have the right to meet the witnesses face to face, does not prohibit such testimony, nor does it apply to such documentary evidence to establish collateral facts as would be admissible under the rules of the common law in other cases.

SAME—CHALLENGE TO JUROR—BIAS.—Upon the challenge for actual bias of a person called as a juror in a criminal case, the question to be determined is, whether there exists upon his part such a state of mind in respect to the party challenging that he cannot try the case impartially, and this is to be determined by the exercise of a sound discretion. A juror who has formed an opinion of the guilt or innocence of the accused, based merely upon newspaper accounts or general rumor, though such as might require evidence to remove, is not necessarily disqualified thereby, if it appears to the trial court, from all the circumstances, that he can try the case impartially.

SAME—WHAT SUBJECT TO REVIEW.— This court will not review the action of the trial court in accepting a juror, unless there are cogent circumstances showing his incompetency, such as having heard the testimony in the case, read a detailed statement of it, or been told it by some one claiming to know.

SAME—INSTRUCTION TO JURY.—A statement by the court, in its instructions to the jury, of the effect of a disagreement at common law, and the mitigation of the rule in the United States, coupled with the remark that they would have to remain together, and not separate until they agreed upon a verdict and brought it into court, is not objectionable, as indicating a determination to keep them together un il they should agree, nor does it imply that the case, in the mind of the court, was so plain that they would not be justified in failing to agree.

SAME — EVIDENCE — DEFENDANT AS WITNESS — CROSS-EXAMINATION. — Under the statute of this state allowing the accused to become a witness in his own behalf (Laws 1880, p. 28), it is error to compel him, on cross-examination, to answer as to any facts not testified to in his direct examination.

LINN COUNTY.    Defendant appeals.    Reversed.

*Weatherford & Blackburn,* and *John Burnett,* for Appellant.

Evidence of dying declarations is admitted upon the single ground of necessity, should be received with great caution, and not at all where other evidence is attainable.    When the fact of killing is virtually admitted by the line of defense adopted, it is unnecessary to prove the declarations of the deceased. (*Collins* v. *Com.*, 12 Bush [Ky.], 271 ; S. C. 2. Am. Crim. Rep. 282.)    The admission of evidence of this kind, under any circumstances, is in direct conflict with our bill of rights, in that the defendant does not then meet the witness face to face. (Code, p. 76 ; Bill of Rights, § 11.)    That portion of the declaration which declared that " he shot me down like a dog," was mere matter of opinion, and clearly inadmissible.    (*Binns* v. *State*, 46 Ind. 311 ; *Montgomery* v. *State*, 80 Ind. 338 ; *Nelson* v. *State*, 7 Hump. 542 ; *State* v. *Donnelly*, 27 N. W. Rep. 339 ; *People* v. *Wasson*, 65 Cal. 538 ; *Collins* v. *Com.*, *supra* ; *State* v. *Shaw*, 63 N. Y. 40.)    The admission of the testimony of defendant, that he had killed a man in Texas before coming here, was error, for the following reasons :    (*a*) The State is not permitted to attack the character of the defendant unless he first puts it in issue.    (*State* v. *Garrand*, 5 Or. 156 ; *State* v. *Lapage*, 24 Am. Rep. 75) ; nor (*b*) show defendant's bad character by proof of particular acts.    (*State* v. *Garrand*, 5 Or. 156 ; *State* v. *Lapage*, 24 Am. Rep. 75 ; *Com.* v. *O'Brien*, 20 Am. Rep. 325 ; *Englemane* v. *State*, 52 Am. Dec. 499.)  Nor prejudice the jury against him by evidence of any other shooting than the one charged in the indictment.  (*People* v. *Daniels*, 11 Pac. Rep. 655.)  Nor show in the defendant a tendency to commit the particular crime with which he is charged (*State* v. *Lapage*, 24 Am. Rep. 83, 87 ; *State* v. *Carson*, 66 Me. 116 ; *Coleman* v. *People*, 55 N. Y. 81; *Schaser* v. *State*, 36 Wis. 430 ; *State* v. *Walters*, 45 Iowa, 389 ; *State* v. *Hannett*, 54 Vt. 83 ; S. C. 4 Am. Cr. Rep. 38 ; *People* v. *Corbin* 15 Am. Rep. 427 ; *Stalker* v. *State*, 9 Conn. 341.)    Such evidence is only admissible where some connection between the two transactions has been shown, and where the proof of the one tends to show the intent with which the other has been done.    (*Dunn* v. *State*, 35 Am. Dec. 54 ; *Shaffner* v. *Com.*,

13 Am. Rep. 649.)    (*d*) This was not cross-examination.    If the court permits the cross-examination to assume a wider scope than the examination-in-chief, the constitutional rights of the defendant are violated, and a new trial must be had. (*State* v. *Huff*, 11 Nev. 26 ; *Gale* v. *People*, 26 Mich. 159 ; *State* v. *Lamb*, 12 Or. 102 ; *People* v. *O'Brien*, 6 W. C. Rep. 245.)    The court erred in its charge to the jury upon the subject of their duty to agree upon a verdict.    The closing words were equivalent to a threat that they would be kept together, and not allowed to separate until they agreed upon a verdict.    (*Fornham* v. *Fornham*, 73 Ill. 502 ; *State* v. *Hurst*, 11 W. Va. 54 ; S. C. 3 Am. Cr. Rep. 117 ; *Slitz* v. *State*, 104 Ind. 359.)    On challenge for cause the prisoner was entitled to a juror wholly unbiased, unprejudiced, and indifferent. Such challenge is to be tried by the court, and exception lies thereto.    (*People* v. *Reynolds*, 16 Cal. 129 ; *Greenfield* v. *The People*, 74 N. Y. 277 ; *State* v. *Webster*, 13 N. H. 491 ; *People* v. *Weil*, 40 Cal. 268 ; *Gray* v. *People*, 26 Ill. 344 ; *People* v. *Brotherton*, 43 Cal. 530 ; *State* v. *McClear*, 11 Nev. 39 ; *People* v. *Casey*, 96 N. Y. 115 ; *Collins et al.* v. *People*, 48 Ill. 145 ; *Stephens* v. *People*, 38 Mich. 739.)

*J. J. Whitney* and *William M. Ramsey*, for Respondent.

The examination of the jurors on their *voir dire* shows that such opinions as they had in relation to the case were derived from general talk about the homicide or newspaper accounts of it; such opinions as every intelligent man must form upon any current topic.    Such jurors are competent under our statute. (*State* v. *Tom*, 8 Or. 177.    See, also, the following cases on this point: *Thomas* v. *The People*, 67 N. Y. 218 ; *State* v. *Futso*, 50 Vt. 483 ; *Stamp* v. *Commonwealth*, 74 Pa. St. 458 ; *People* v. *Brown*, 48 Cal. 253 ; Thompson and Merriam on Juries, 215–217.)    The challenge for actual bias is a matter within the discretion of the trial court, and not subject to review. (Civil Code, Sec. 183, and Crim. Code, Sec. 246.)    When he becomes a witness in his own behalf, the defendant subjects

himself to *the same liabilities*, on cross-examination, as other witnesses. (Wharton's Crim. Evidence, Sec. 430 ; *State* v. *Witham*, 72 Me. 531 ; *State* v. *Wentworth*, 65 Ib. 234; *State* v. *Ober*, 52 N. H. 459, 462 ; *Connors* v. *The People*, 50 N. Y. 240 ; *State* v. *Fay*, 43 Iowa, 651; *State* v. *Clinton*, 67 Mo. 380 ; *State* v. *Cohn*, 9 Nevada, 179; *Brandon* v. *The People*, 42 N. Y. 265; *Fralich* v. *The People*, 65 Barbour, 48; *Town of Norfolk* v. *Gaylard*, 28 Conn. 309.) Where a witness is privileged from answering, on the ground that his answer would have a direct tendency to criminate or disgrace him, he must *himself* claim his privilege. A party or attorney cannot claim it for him. (1 Greenleaf, Sec. 451; 1 Starkie, pp. 195–197; Wharton, Crim. Ev., Sec. 465; *State* v. *Wentworth*, 65 Me. 234, 241; *Cloyes* v. *Thayer*, 3 Hill. 264; *Ward* v. *People*, 6 Ib. 144; *Brandon* v. *People*, 42 N. Y. 265.) And it is not the duty of the court to notify the witness of his privilege. (Whart. Cr. Ev., Sec. 465.) The objections to the charge to the jury cannot be entertained. The portions objected to consist of several propositions, and the exception does not show to which part the exception is taken. (Civil Code, Sec. 208.) If a series of propositions be embodied in instructions, and the instructions be excepted to in a mass, if any one of the propositions be correct, the exception must be overruled. (Thompson, Charging the Jury, Sec. 116; *Johnson* v. *Jones*, 1 Black. [U. S.] 209–212; *Hunt* v. *Maybee*, 7 N. Y. 273; *Decker* v. *Matthews*, Ib. 313; *U. S.* v. *Conklin*, 1 Wall. 644; *Harvey* v. *Tyler*, 2 Wall. 328.) To urge upon the jury the importance of agreeing upon a verdict is not error. (Thompson, Charging the Jury, Sec. 58; *Allen* v. *Woodson*, 50 Ga. 53; *Pierce* v. *Refhuss*, 35 Mich. 53.)

THAYER, J.—The appellant was indicted, tried and convicted of murder in the first degree, before the circuit court for the county of Linn. From that conviction he has appealed to this court, and alleges several grounds of error, for which he claims the judgment should be reversed and a new trial granted. The main errors assigned are : First, The admission of

the dying declaration of the party whom he is alleged to have murdered. Second, Permitting improper questions to be asked the appellant when on the stand as a witness in his own behalf, and compelling him to answer them. Third, Erroneous instructions given by the court to the jury in regard to the manner of their deliberations, of the necessity of their agreeing upon a verdict, and remarking to them in the charge that they would be kept together until they had agreed upon their verdict: and, Fourth, error in the court in overruling certain challenges made for cause to certain of the jurors drawn to try the appellant upon the charge. We have examined these various grounds with considerable care, and will briefly state the conclusions at which we have arrived.

In regard to evidence of dying declarations in such a case, it is contended by the appellant's counsel that they are not admissible at all, in view of the constitutional immunity that a party accused of an offense shall have the right to be confronted by the witnesses against him, and that, if receivable at all, it must be in a case where no other evidence of the killing is obtainable ; that their admission as evidence is only upon the ground of necessity, which did not exist in this case, as the killing was admitted. This character of testimony has been regarded as competent for a very long time, long before the adoption of the constitutional guaranty in favor of accused parties above referred to, and has universally been admitted since; and we could not determine that the bill of rights contained in the constitution of this state had changed the rule, without exhibiting great arrogance upon our part. The appellant's counsel seemed to think that the declaration that " in all criminal prosecutions the accused shall have the right to meet the witnesses face to face," could have been nothing less than that they should be living and present in court when their testimony is delivered. But the right to offer that character of proof is not restricted to the side of the prosecutor ; it is equally admissible in favor of the party charged with the death. (1 Green'l Ev., Sec. 159.) The objection to it, therefore, might, if sustained, operate very injuriously to an accused, and the

clause in the bill of rights, if construed as the counsel contended it should be, have the effect to deprive the latter of an important right. The rule, although sanctioned by constitutional declaration, like all general rules, has its exceptions. It does not apply to such documentary evidence to establish collateral facts, as would be admissible under the rules of the common law in other cases. Cooley Const. Lim., note 2, 318, and the exceptions to it, as Judge Cooley says, " are of cases which are excluded from its reasons by their peculiar circumstances." The admission of dying declarations has uniformly been held to be one of the exceptions, and it would be folly for this court to attempt to overthrow the numerous decisions to that effect. There being other evidence of the killing would not necessarily preclude the admission of such declarations. They are admitted upon the presumption that there is no other evidence as satisfactory; though, doubtless, the origin of the rule was the inability to prove the act by any other testimony. The trial judge has so much better opportunity than this court to determine questions of that character, that it would not be proper to interfere with the decision of the former, unless a clear case of error is shown to have been committed.

Complaint is made, also, that the declarations of the party slain in the present case were not as to facts entirely, but embraced conclusions—that part of them, particularly, in which the deceased said : " He shot me down like a dog." Declarations of a party *in extremis*, in order to be admissible, must be as to facts and not conclusions. They are permitted as to those things to which the deceased would have been competent to testify, if sworn in the case. (1 Green'l Ev., Sec. 159.) But I do not think the expression of the deceased a conclusion. It was given as a part of his narrative relating to the affair, and I think it was merely intended to illustrate the lack of provocation and the wantonness in which the appellant did the act. It was descriptive of the manner in which the act was committed. It conveyed the idea that the appellant disregarded the claims of humanity, and, without giving him any

XIV. OREG.—20.

warning, wantonly shot him.    It was the statement of a fact made by way of illustration.

The overruling of certain of appellant's challenges to jurors called to try the case, is another question left largely to the discretion of the presiding judge at the trial.    Cases of homicide are calculated to create excitement and comment; and where information is so readily and generally diffused throughout the entire community as in this age of newspapers, the acts and circumstances attending such an affair are liable to be known and understood extensively.    It becomes difficult, therefore, to select a jury in a community where it has occurred without drawing jurors who know more or less about the case. The person accused of a crime is entitled to a fair and impartial trial ; but does it necessarily follow, because men read and are informed in regard to the current events of the day, that they are thereby disqualified to act as such jurors ?    This depends much upon the credulity of the persons, and the tenacity with which they adhere to preconceived notions.    It hardly seems possible that a sensible person would allow impressions from such a source to affect his deliberations and verdict as a juror in so important a matter.    The judge who tries the case determines the sufficiency of the challenge to the juror.    If made, as in this case, for actual bias, and denied by the opposite party, testimony is given upon the question, and upon that testimony the sufficiency of the challenge is determined.    The point to be determined is, whether there exists such a state of mind upon the part of the juror in reference to the party challenging, that he cannot try the case impartially and without prejudice to the party's substantial rights ; and this, the statute says, must be determined by the exercise of a sound discretion.    The evidence in this case upon the question of the qualification of the jurors challenged, showed that they had, to some extent, formed an opinion as to the guilt or innocence of the accused, which they said would require evidence to remove, but thought they could try the case impartially.    The trial judge heard their testimony, had an opportunity to observe their manner, and deemed them qualified to

sit in the case.    Unless, therefore, we conclude there has been
an abuse of discretion, we have no right to interfere in the
decision upon that point.    It was a question of fact to be de-
termined.    The impression or opinion the jurors had formed
was from newspaper accounts and general rumor, and the cir-
cuit court had a better understanding of the extent of the
opinion than we can obtain from the bill of exceptions.    This
court ought not to reverse a judgment upon such grounds, un-
less the evidence of the juror's incompetency is pretty clear
and certain—at least, shows some cogent circumstances against
it—circumstances of a nature calculated to impress upon the
mind of the juror a conviction, such as having heard the testi-
mony in the case, read a detailed statement of it, or been told
it by some one claiming to know.

The objection to the instructions to the jury, as to their du-
ties—telling them the effect of a disagreement at common law,
and of how juries were kept together until they did agree ; the
mitigation of the rule in the United States; and remarking to
them that they would have to remain together, and could not
separate until they agreed on a verdict, and brought it into
court—cannot be entertained.    It was proper for the court to
inform the jury respecting their duty ; advise them how they
should consider the matter before them, and the course to pur-
sue in reaching a conclusion.    Nor should the concluding re-
mark in the charge be construed as any determination to keep
them together until they had agreed ; or an indication that the
case in the mind of the court was so plain that they would
not be justified in failing to agree.    The court was evidently
endeavoring to administer the law fairly and honestly, and I
am satisfied that the apprehension of counsel that the course
pursued was improper arises from a zeal for their client, and
an over-zealousness that his rights under the law have been dis-
regarded.    The court had a responsibility to discharge, and so
far as anything appears in the transcript, did it conscientiously.
The jury must have understood that they would be discharged
if not able to agree, from what the court expressly told them.

The next and last ground of error involves the right of the

attorney of the state to examine the appellant while on the
stand as a witness.  This presents the most serious question in
the case, by far.  It appears that the appellant offered himself
as a witness in his own behalf, and testified to the circumstances
of the killing.  After having given in his evidence upon that
point, the state's attorney asked him the following questions:
" Did you not kill a man in Texas before coming here ? "
" How often have you been without it [referring to a pistol]
within the last six months ? "  " Was it not true that when at
Corvallis you were at target practice most of the time? "
" You are a center shot? "  To each of which questions the
appellant's counsel objected, upon the grounds that it was im-
proper, immaterial, incompetent, and not cross-examination.
The court overruled the several objections; and required the
appellant to answer the questions, and he made qualified af-
firmative answers to them all.  To each of the rulings upon the
admissibility of this evidence, the appellant's counsel saved an
exception.

The discussion of these exceptions has taken a wide range.
Authorities from a number of the states have been cited, to
show that when a defendant in a criminal case becomes a wit-
ness in his own behalf, he subjects himself to the same liabili-
ties on cross-examination as other witnesses.  In support of this
proposition, counsel for the state have cited decisions from Maine,
New Hampshire, New York, Iowa, Missouri, Nevada, Connec-
ticut, Maryland, Massachusetts, and perhaps other states ; at
least, they could have cited decisions from Indiana and probably
from Minnesota, to the same effect.  I have examined the stat-
utes of several of those states, and so far as I have been able to
ascertain, have found that they provide that the defendant is
entitled to offer himself generally as a witness in his own behalf,
and no restriction is placed upon the extent of the cross-exam-
ination.  The statute of this state, which permits a defendant
in a criminal case to offer himself as a witness in his own be-
half, provides that the offer, when so made, shall be deemed to
have given to the prosecution a right to cross-examine him up-
on all the facts to which he has testified, tending to his convic-

tion or acquittal. (Laws, 1880, pp. 28, 29.) The question therefore, is, how far he subjects himself to cross-examination under that statute. It is very likely that if the statute contained no limitation as to the extent of the cross-examination of a defendant in such a case, he would occupy the same footing of any other witness, if he chose to take the stand; although some of the decisions from the states in which no limitation is imposed upon the cross-examination hold, that the cross-examination of a defendant in such a case should not then be allowed the same latitude permitted in cross-examination of a witness not a party defendant. The ground of the distinction was an apprehension that the defendant in such case might be convicted of one offense, upon his admission that he had committed others. (*People* v. *Brown*, 72 N. Y. 571.) It seems to me that this distinction is very properly made, conceding that an ordinary witness may be interrogated upon his cross-examination as to whether he has not committed other offenses that cannot affect him beyond his credit in the particular case, unless it expose him to prosecution, and then he can claim his privilege. But as regards the party accused, such examination operates as a two-edged sword; it would not only impair his credit as a witness, but create a strong prejudice in the minds of the jury against him, and be a material aid towards convicting him. Unless, therefore, a defendant in a criminal prosecution is " pure as the icicle which hangs on Dian's temple," he had better keep off the witness stand, if the prosecution is at liberty to ransack his past life. Place a person on trial upon a criminal charge, and allow the prosecution to show by him that he has before been implicated in similar affairs—no matter what explanation of them he attempts to make—it will be more damaging evidence against him and conduce more to his conviction than direct testimony of his guilt in the particular case. Every lawyer who has had any particular experience in criminal trials knows this; knows that juries are inclined to act from impulse, and to convict parties accused upon general principles. An ordinary juror is not liable to care about such a party's guilt or innocence in the particular

case, if they think him a scapegrace or vagabond. That is human nature. The judge might demurely and dignifiedly tell them that they must disregard the evidence, except so far as it tended to impeach the testimony of the party ; but what good would that do ? And it is not at all improbable that he himself would imbibe some of the prejudice which proof of the character referred to is liable to engender. Such a practice would necessarily prevent the party accused from ever offering himself as a witness, which would leave the jury to conjecture and speculate why he pursued such a course; and often, very probably, they would draw an unfavorable inference from the circumstance.

The legislature of this state evidently believed, when it adopted the act referred to, that the cross-examination of the defendant should be restricted. No one will claim, who reads the act, but that such restriction was intended. The question, however, is, how far it extends. Counsel for the state insists that it extends no further than to prevent the prosecution from compelling the defendant to be a witness against himself ; that he may be required to answer any questions that will cast discredit upon his testimony, without overstepping the limit imposed by the legislature. But how can he testify to his own infamy, as we have shown, without prejudicing his defense, and furnishing an argument in favor of his guilt ? If he were shown to be a person who had been guilty of similar acts, whose history was marked by a career of crime, and who had been a constant violator of the law, would it not render it more probable that he was guilty in the particular case ? And why not follow the plain reading of the statute, and its obvious meaning ? It says that when he offers his testimony as a witness in his own behalf, " he shall be deemed to have given to the prosecution a right to cross-examine him *upon all facts to which he has testified.*" There is no mistaking the intention of the legislature in the matter. It permitted the defendant in a criminal prosecution to be a witness in his own behalf, and subjected him to a cross-examination as to the facts to which he should testify ; and the courts cannot extend the right

beyond that.   Three of the states of the Union have adopted similar provisions—California, Missouri and Michigan—and their courts have construed them.

In *People* v. *O'Brien*, 66 Cal. 602, the accused, in a prosecution for embezzlement, offered himself as a witness.   Upon his examination in chief, his testimony was confined to the alleged embezzlement; but upon cross-examination he was examined generally as a witness in the case, which course was objected to by his counsel.   The Supreme Court in bank, after referring to an article in the constitution of that state, which declares that no person shall be compelled in any criminal case to be a witness against himself, and to the statute which provided that, if he offered himself as a witness, he might be cross-examined as to all matters about which he was examined in chief, held that it was only under and by virtue of that provision that the defendant in such a case could be a witness at all ; and that when called in in his own behalf, and examined respecting a particular fact or matter in the case, the right of cross-examination was confined to the fact or matter testified to on the examination in chief; that such was the express language of the statute ; and that when the court allowed the prosecution to make the defendant a general witness in its behalf, it invaded a right secured to the defendant, not only by the statute but by the constitution.

In *State* v. *Porter*, 75 Mo. 171, 177, in determining a similar question under a late statute of that state, the court says : " The court erred in permitting the state's attorney to cross-examine the defendant in relation to matters to which he did not testify in his own examination in chief.   Under the act of 1877, it was held in *State* v. *Clinton*, 67 Mo. 380 ; *State* v. *Cox*, Id. 392 ; *State* v. *Rugan*, 68 Mo. 214 ; and *State* v. *Testerman*, 68 Mo. 408, that if a defendant in a criminal cause availed himself of the privilege of testifying in his own behalf, the same latitude of cross-examination would be allowed the state as in the case of any other witnesses ; but that act was amended at the last session of the general assembly, and he now can be cross-examined only as to matters testified to by him in his ex-

amination in chief. In *Gale* v. *People*, 26 Mich. 157, where
it appears a defendant had made a statement in a criminal pros-
ecution against him, in accordance with the laws of that state,
and upon which the prosecution was entitled to cross-examine
him, a similar question was determined. In passing upon the
case, Judge Cooley, who delivered the opinion of the court, at
page 159, said : " A more serious question arises upon the
cross-examination of the defendant. His statement covered the
whole case, and he was cross-examined on it without objection.
The prosecution then, after inquiring about the former place of
residence of respondent, produced several letters in view of the
jury, and from what they purported to contain, interrogated
the respondent whether he had lived or been in a number of
places named, and whether at one place he had not been arrested
on a charge of murder, and at others also had been arrested,
and at others still, been put in jail. All these questions were
objected to, but sustained by the court, and were answered.
The court, however, informed the prisoner, after the first had
been put and answered, that it was his privilege to answer any
question, or to decline to answer, just as he saw fit. If the
questions were improper, it must be apparent that the error
was not cured by the instruction to the prisoner that he might
decline to answer at his option. When the judge sustained the
exceptions, he decided, in effect, that they were proper to be
put and answered; and had the prisoner declined to answer
any of them, he would have been put in the position before the
jury, of coming upon the stand in his own exculpation, and
then refusing to make his disclosure as full as the law requir-
ed. An unfavorable inference upon the minds of the jury
must inevitably have been produced, which in this case would
have been increased by the exhibition of letters, brought out
before the jury for no purpose that we can conceive, unless to
convey an impression that they contained damaging disclosures
regarding the prisoner, which he must either admit, or falsify
the facts. If, therefore, the questions were improper in them-
selves, the error was a serious one ; and we have no doubt of
their impropriety."

The statute provides that the defendant in a criminal case shall be at liberty to make a statement to the court or jury, and may be cross-examined upon any such statement; and after referring to *People* v. *Thomas*, 9 Mich. 321, where it was held that a cross-examination on such a statement would not be allowed to go beyond it—could not extend over the entire issue, as it might if he were a general witness, or into any of the collateral inquiries whereby a witness's credit or memory is sometimes tested; and after expressing an approval of that case, the learned judge proceeded: " We have frequently had occasion to remark on the beneficent purpose which the statute of 1861 had in view, and to observe that, practically, it had tended to the furtherance of justice ; but it can only have this effect when administered in the spirit which led to its adoption. Few men, however innocent, could safely go upon the stand to answer a criminal charge, if they must at their peril be prepared to give satisfactory answers to questions regarding their whole former life, or if they declined to do so, have their triers informed that the information they declined to give it was proper for the prosecution to call out, and that the refusal to respond to the questions justly subjected them to unfavorable inferences. Such would be the practical result of a refusal to answer an interrogatory which the court had sustained after objection made."

This court, at the March term, 1885, had occasion to pass upon the effect of this same statute, in the case of *State* v. *Lurch*, 12 Or. 90. That was a case of uttering a forged note. The defendant offered himself as a witness, and after his examination in chief, the state's attorney asked him to write his name and that of the other party to the note which he was alleged to have forged, and the court required him to do so, against the objection of his counsel. This court held that it was error, and reversed the judgment, upon the grounds that the prosecution in its cross-examination was confined to the matters to which the defendant had testified.

It is claimed by the appellant's counsel, that the questions propounded to appellant when on the stand as a witness could

not properly have been put to a general witness. That matter was pretty thoroughly considered by the court in *State* v. *Bacon*, 13 Or. 143. The court there held that it was in the discretion of the trial court to permit a witness to be asked on cross-examination whether he had ever been arrested for a felony, when the object of the question was to test the credibility of the witness, and not simply to disgrace him. Whether the questions asked the appellant before referred to tended to discredit him, is very doubtful to my mind. It seems to me that they were more calculated to elicit from him a state of facts tending to show that he was a kind of man that would be likely to commit a homicide ; but be that as it may, I am satisfied that the counsel for the state had no right to ask the questions, as the appellant had not testified to any such facts. The inquiry related to a purely collateral matter, and was highly prejudicial to the appellant. The right to call out such evidence gave the prosecuting attorney the right to comment upon it, and to draw inferences and deductions therefrom ; and no character of proof, in my opinion, would be more potent to influence a conviction than that. I think it was entirely improper to permit such inquiries to be made, and for that reason the judgment of conviction should be reversed, and a new trial ordered.

LORD, C. J., concurring.—The question here is, whether our statute fixes a limitation to the cross-examination that does not exist in the case of other witnesses. Quite a number of cases were cited, to the effect that when a defendant in a criminal action offers himself as a witness in his own behalf, he occupies the position of any other witness ; may be cross-examined as to any matter pertinent to the issue : may be contradicted or impeached as any other witness, and may be subject to the same tests. The fact that he is a party makes no difference. It neither increases nor diminishes his rights or privileges as a witness, but subjects him to the same latitude, and same limitations in his cross-examination as are applicable to any other witness. It will be noted, however, that the stat-

utes under which these decisions have been made have fixed no limitation as to the rights of the party defendant, when he voluntarily places himself upon the witness-stand, although the reasoning of some of them is broad enough to cover the case in hand under our statute.

Our statute provides that when the party accused offers himself as a witness in his own behalf, he shall be deemed to have given to the prosecution a right to cross-examine him up-on all facts to which he has testified tending to his conviction or acquital. Does this allow the accused, when a witness in his own behalf, to be cross-examined on matters not relevant to the issue, for the purpose of affecting his credibility? As to a witness other than the accused, the practice of asking such questions has been left to the sound discretion of the court try-ing the case. The reason assigned for such a mode of inter-rogation is, to aid the jury in judging the character of the wit-ness from his own voluntary admissions. In a note to *Rex* v. *Pither*, 12 Eng. C. L. 60, it is said, that "The law as to what questions may be asked on cross-examination, the an-swers to which have a direct tendency to degrade the witness, is very obscurely laid down in the books." It is there said, however, that "In practice, the asking of questions to de-grade the witness is regulated by the discretion of the learned judge, in each particular case." For this reason an appellate court will not reverse, unless it is manifest from the record that there has been an abuse of discretion, such as allowing the cross-examination to take an unreasonable range in collateral matters not affecting the credibility of the witness.

From the necessity of the case, it is difficult, perhaps impos-sible, to lay down any precise or definite rule fixing the limits of such cross-examination. Necessarily, it must be left to the sound discretion of the trial court, subject only to review for its abuse. This, then, being the case, in the absence of any definite rule to guide the trial court, is there not a neces-sity for the exercise of greater caution in permitting such questions, when the accused is a witness on his own trial, and a liability to prejudice his cause which is not incurred from

the disparagement of other witnesses by such voluntary admissions.  "He goes," said Church, C. J., "upon the stand under a cloud; he stands charged with a criminal offense not only, but is under the strongest possible temptation to give evidence favorable to himself.  His evidence, therefore, is looked upon with suspicion and distrust; and if, in addition to this, he may be subjected to a cross-examination upon every incident of his life, and every charge of vice or crime which may be made against him, and which has no bearing upon the charge for which he is being tried, he may be so prejudiced in the minds of the jury as frequently to induce them to convict, upon evidence which would otherwise be deemed insufficient."  It is true, this is only an argument against the abuse of discretion in the trial court, but does it not show the increased danger or liability to prejudice the cause of the defendant, to permit such inquiries in cross-examination to be made of him when a witness on his own behalf?  And is this not the reason why the statute, in effect, says that his cross-examination shall be limited, restricted, or confined to relevant matters only—to facts to which he has testified tending to his conviction or acquittal?

The cases cited from Missouri, Michigan, and California, under a statute of similar import, hold that the defendant's rights as a party add a limitation that does not exist in the case of another witness.  In New York, Massachusetts, Indiana, Ohio, and other states where the statutes have no words of limitation, it is held that the defendant, while occupying the witness stand, was entitled to the same rights and privileges, and was subject to the same rules of evidence, as any other witness.  The general rule in respect to any witness on cross-examination is, that he may be cross-examined as to any facts and circumstances testified to by him on his direct examination; and, personally, I have been inclined to think that our statute was but a mere reaffirmation of this rule as to the accused, and that when he voluntarily took the witness stand, he subjected himself to the same tests as are applied to any other witness, and in the sound discretion of the trial court

may be cross-examined as to collateral facts calculated to test his credibility.

But the question is debatable, and somewhat involved in doubt, and upon which there is some diversity of judicial utterances; and in such case I feel constrained to resolve my doubts *in favorem vitæ.*

Judge Strahan, having been of counsel, did not sit in this case.