[Criminal No. 141.    Filed March 28, 1900.]

[60 Pac. 694.]

EDWARD LEWIS, Defendant and Appellant, v. TERRITORY OF ARIZONA, Plaintiff and Respondent.

1. CRIMINAL LAW—EVIDENCE—DEFENDANT AS WITNESS—CROSS-EXAMINATION OF—EXTENT AND LIMITATION—REV. STATS. ARIZ. 1887, PEN. CODE, PAR. 2040, CONSTRUED.—Where the statute, *supra*, provides that "A defendant in a criminal action or proceeding cannot be compelled to be a witness against himself; but if he offer himself as a witness, he may be cross-examined by the counsel for the territory as to all matters about which he was examined in chief," it is error to compel a defendant who has testified in his own behalf concerning the circumstances of the killing and in relation to his movements immediately before and after the homicide to answer on cross-examination as to whether or not he had been previously convicted of other felonies.

APPEAL from a judgment of the District Court of the Fourth Judicial District in and for the County of Yavapai. R. E. Sloan, Judge. Reversed.

The facts are stated in the opinion.

G. A. Allen, J. E. Morrison, and Herndon & Norris, for Appellant.

C. F. Ainsworth, Attorney-General, for Respondent.

DAVIS, J.—The defendant, Edward Lewis, was tried and convicted, at the June term, 1899, of the district court of Yavapai County, of the crime of murder in the first degree, and is under sentence of death. From the judgment of conviction he prosecutes this appeal. On the trial the defendant was placed upon the stand as a witness in his own behalf, and testified concerning the circumstances of the killing and in relation to his movements immediately before and after the homicide. Upon cross-examination, and against the objection of the defendant, the court permitted the district attorney to ask, and required the defendant to answer, the following questions: "Were n't you tried and convicted at Flagstaff, under the name of Lovell, for the crime of burglary?" "Were n't you sentenced by Judge Hawkins, here, to one year in the penitentiary?" "Is n't it true that you were tried, convicted, and sentenced by Judge Hawkins, at Tucson, for the crime of forgery, and that you served a term of eighteen months after that; that you escaped from the penitentiary, and were recaptured under the name of Ed Lewis?" These questions were asked for the purpose of affecting the credibility of the defendant as a witness. They were all answered in the affirmative, and no other evidence was offered relative to such former convictions. It is claimed that the court's ruling in allowing this cross-examination was an invasion of the defendant's legal rights, and prejudicial error, for the reason that the statute of the territory limits the cross-examination of a defendant in a criminal case to the matters about which he was examined in chief. The provision of our Penal Code in this regard is as follows: "A defendant in a criminal action or proceeding cannot be compelled to be a witness against himself; but if he offer himself as a witness, he may be cross-examined by the counsel for the territory as to all matters about which he was examined in chief." Par. 2040. At common law the defendant in a criminal case was not a competent witness, and the constitution ordains that he shall

not be compelled to be a witness against himself. The rule of the common law which prevented the prisoner from testifying on his own trial was considered to be oppressive, and in nearly all of the states there is now some form of statute which permits the accused to be a witness in his own behalf, but shields him from any unfavorable presumption which his refusal to testify might create. In general, these enactments contain no restriction upon the cross-examination of the defendant as a witness, such a limitation being found only in the statutes of California, Oregon, Missouri, Louisiana, and Arizona. In those jurisdictions where the cross-examination of the accused is not by the statute expressly bounded by the examination in chief, it has been generally held that he occupies the same footing as any other witness when he takes the stand, although there is some eminent judicial authority to the contrary. "These statutes," said Judge Cooley, "confer a privilege, which the defendant may use at his option. If he does not choose to avail himself of it, unfavorable inferences are not to be drawn to his prejudice from that circumstance; and, if he does testify, he is at liberty to stop at any point he chooses, and it must be left to the jury to give a statement, which he declines to make a full one, such weight as, under the circumstances, they think it entitled to; otherwise, the statute must have set aside and overruled the constitutional maxim which protects an accused party against being compelled to testify against himself, and the statutory privilege becomes a snare and a danger." Cooley on Constitutional Limitations, 5th ed., p. 386. In Massachusetts the provision is, that the accused "shall at his own request, and not otherwise, be deemed a competent witness." Pub. Stats. c. 169, sec. 18. Under this statute it has been held that when the defendant offers himself as a witness he waives all protection guaranteed by the constitution, and becomes a competent witness as to the whole case; which has induced the observation by a distinguished jurist that "confessions are thus forced from him with the sanction of the law, and the inquisition of torture is restored, only without the rack and thumbscrew." But it is conceded to be the general holding, in those states which impose no restriction upon the cross-examination of the accused, that impeaching questions of the character disclosed in this case violate no constitutional right. In Arizona, however, the

scope of the cross-examination of a defendant in a criminal case is restricted to the "matters about which he was examined in chief." It is not correct to say that this is merely a reiteration of the rule applicable to all witnesses; for witnesses, under the general rule, can, for various purposes, be asked concerning matters about which they had not been examined in chief. 2 Phillips on Evidence, p. 895 et seq. The limit of the cross-examination of ordinary witnesses is not marked with any great accuracy or distinctness, but the range and extent thereof is left to the discretion of the trial court, subject to the requirement that it must relate to facts pertinent to the issue, or which tend to discredit the witness or impeach his moral character. A cardinal rule of construction makes it the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed. *Montclair* v. *Ramsdell*, 107 U. S. 147, 2 Sup. Ct. 391, 27 L. Ed. 431. If the legislature had intended to put a defendant in a criminal case, testifying for himself, upon the same footing as other witnesses, it could easily have signified that intention in one of two ways—First, by saying nothing about it; or, second, by saying, affirmatively, that he should be subject to cross-examination as other witnesses. But the language of our code is, that he may be cross-examined "as to all matters about which he was examined in chief," and either these words are entirely without signification, or else they prescribe a definite boundary within which the cross-examination of a defendant must be confined. That the latter is the true construction seems to us quite clear.

The statute of Oregon, which permits a defendant to offer himself as a witness in his own behalf, provides that the offer, when so made, "shall be deemed to have given to the prosecution a right to cross-examine him upon all facts to which he has testified tending to his conviction or acquittal." Laws 1880, p. 28. In *State* v. *Saunders*, 14 Or. 300, 12 Pac. 441, the supreme court, discussing a similar question under that statute, said: "Place a person on trial upon a criminal charge, and allow the prosecution to show by him that he has before been implicated in similar affairs, no matter what explanation of them he attempts to make, it will be more damaging evi-

dence against him, and conduce more to his conviction, than direct testimony of his guilt in the particular case. Every lawyer who has had any considerable experience in criminal trials knows this,—knows that juries are inclined to act from impulse, and to convict parties accused upon general principles. Ordinary jurors are not liable to care about such a party's guilt or innocence in the particular case, if they think him a scapegrace or vagabond. That is human nature. The judge might demurely and dignifiedly tell them that they must disregard the evidence except so far as it tends to impeach the testimony of the party; but what good would that do? . . . The legislature of this state evidently believed, when it adopted the act referred to, that the cross-examination of the defendant as a witness should be restricted. No one will claim who reads the act but that such restriction was intended. The question, however, is as to how far it extends. Counsel for the state insist that it extends no further than to prevent the prosecution from compelling the defendant to be a witness against himself; that he may be required to answer any question that will cast discredit upon his testimony without overstepping the limit imposed by the legislature. But how can he testify to his own infamy, as we have shown, without prejudicing his defense, and furnishing an argument in favor of his guilt? If he were shown to be a person who had been guilty of similar acts, whose history was marked by a career of crime, and who had been a constant violator of the law, would it not render it more reasonable that he was guilty in the particular case? And why not follow the plain reading of the statute and its obvious meaning? It says that when the accused offers his testimony as a witness in his own behalf he 'shall be deemed to have given to the prosecution a right to cross-examine him upon all facts to which he has testified.' There is no mistaking the intention of the legislature in the matter. It permitted a defendant in a criminal prosecution to be a witness in his own behalf, and subjected him to a cross-examination as to the facts to which he would testify, and the courts cannot extend the right beyond that.''

The law of Michigan formerly contained a provision that the ''defendant shall be at liberty to make a statement to the court or jury, and may be cross-examined on any such statement.'' Act 1861, No. 125. In *People* v. *Thomas,* 9 Mich. 321,

it was held that a cross-examination on such a statement would not be allowed to go beyond it,—could not extend over the entire issue, as it might if he were a general witness, or into any of the collateral inquiries, whereby a witness's credit or memory is sometimes tested.

The Missouri statute on this point provides "that no person on trial or examination . . . shall be required to testify, but any such person may, at the option of the defendant, testify in his own behalf or on behalf of a co-defendant, and shall be liable to cross-examination as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case." Rev. Stats. 1879, sec. 1918. Under this statute, which would appear more favorable to the right of cross-examination than that of Arizona, it has uniformly been held that the cross-examination of the accused must be limited to those matters referred to in his direct examination, and if extended beyond that will justify reversal. *State* v. *Chamberlain,* 89 Mo. 129, 1 S. W. 145; *State* v. *McLaughlin,* 76 Mo. 320; *State* v. *Turner,* 76 Mo. 350; *State* v. *Porter,* 75 Mo. 171; and *State* v. *McGraw,* 74 Mo. 573. In both *State* v. *McLaughlin* and *State* v. *Turner, supra,* the ground of reversal was the cross-examination of the defendant as to matters and crimes not testified to in his examination in chief, and in *State* v. *McGraw* it was held reversible error to permit the defendant to be asked if he had not been before convicted and sent to the penitentiary.

The Penal Code of California contains the same provision as that of Arizona respecting the scope of the defendant's cross-examination, and its effect, as there construed, is to take away from the court any discretion which it might ordinarily exercise in allowing the range of cross-examination to extend beyond the matter brought out upon the direct examination, and to prevent the prosecution from questioning the defendant upon the case generally, and, in effect, making him its own witness. *People* v. *Gallagher,* 100 Cal. 466, 35 Pac. 80. But it has been decided in California that, for the purpose of affecting his credibility, the defendant in a criminal case may be asked whether he has not been convicted of a prior felony. The decision, however, is put upon the ground that the governing statute is another section, not contained in our code, which provides that, for the purpose of impeaching a witness,

"It may be shown by the examination of the witness . . . that he has been convicted of a felony." *People* v. *Johnson,* 57 Cal. 571; *People* v. *Crowley,* 100 Cal. 478, 35 Pac. 84. Prior to the enactment of this latter provision, such proof could only be made by the record of the judgment. *People* v. *McDonald,* 39 Cal. 697; *People* v. *Reinhart,* 39 Cal. 449. It is to be observed that in the more recent case of *People* v. *Arrighini,* 122 Cal. 121, 54 Pac. 591, the court expresses doubt as to the correctness of the rule enunciated in *People* v. *Johnson,* 57 Cal. 571.

We think that the cross-examination complained of in the case at bar was a clear invasion of the right intended to be secured to the defendant by paragraph 2040 of the Penal Code, and that the same was highly prejudicial to him on the trial. For this error the judgment of the district court will be reversed, and the cause remanded for a new trial.

Street, C. J., and Doan, J., concur.